FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 12, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEE L., | No. 4:17-CV-05170-JTR |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 15. Attorney Chad L. Hatfield represents Lee L. (Plaintiff); Special Assistant United States Attorney Sarah Leigh Martin represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 3. After reviewing the administrative record and briefs filed by the parties, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on January 3, 2014, Tr. 66-67, alleging disability since September 15, 2013, Tr. 203, 210, due to kidney disease, carpal

ORDER GRANTING DEFENDANT'S MOTION - 1

tunnel syndrome, numbness in her hands, high blood pressure, depression, anxiety, high cholesterol, and anemia. Tr. 246. The applications were denied initially and upon reconsideration. Tr. 128-35, 138-48. Administrative Law Judge (ALJ) Kimberly Boyce held a hearing on May 23, 2016 and heard testimony from Plaintiff and vocational expert Kimberly Mullinax. Tr. 39-65. The ALJ issued an unfavorable decision on June 21, 2016. Tr. 23-33. The Appeals Council denied review on September 22, 2017. Tr. 1-6. The ALJ's June 21, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff initiated this action for judicial review on October 19, 2017. ECF Nos. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was just shy of 53 years old at the alleged date of onset. Tr. 203. She completed the twelfth grade in 1979 and received specialized job training in cabinetry in 1996. Tr. 247. Her reported work history includes the jobs she referred to as "Sanded Cabinets and Doors," "Sprayer and Finisher Cabinet," and temporary laborer. Tr. 236, 248. When applying for benefits Plaintiff reported that she stopped working on May 31, 2013 because she was a temporary worker and the job had ended. Tr. 247. She stated that she became unable to work as of September 15, 2013. *Id*.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is

not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of

"disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On June 21, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from September 15, 2013 through the date of the decision.  The ALJ determined that for DIB purposes, Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014.  Tr. 25.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 15, 2013, the amended date of onset.  Tr. 25.

At step two, the ALJ determined that Plaintiff had the following severe impairments:  kidney disease; diabetes mellitus; hypertension; obesity; affective disorder; and anxiety disorder.  Tr. 25.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 26.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a range of light work with the following limitations:

> The claimant can never climb ladders, ropes, or scaffolds, work at unprotected heights or in proximity to hazards.  The claimant can perform work in which exposure to extreme heat, humidity and/or vibration is not present.  In order to meet ordinary and reasonable employer expectations regarding attendance, production and work place behavior, the claimant can understand, remember and carry out unskilled, routine and repetitive work that can be learned by demonstration, and in which tasks to be performed are predetermined by the employer.

Tr. 28.  The ALJ identified Plaintiff's past relevant work as Industrial Cleaner (DOT 381.687-018), Paint Sprayer II (DOT 741.687-018), Hand Sander (DOT 761.387-010), and Counter Clerk (DOT 249.366-010).  Tr. 33.  The ALJ found that

Plaintiff was capable of performing her past relevant work as a Hand Sander and Counter Clerk. *Id.*

The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from September 15, 2013, through the date of the ALJ's decision. Tr. 33.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred in her determinations regarding the date last insured and step four.

## DISCUSSION[1]

**1.    Date Last Insured**

Plaintiff argues that the ALJ erred in finding that her date last insured was December 31, 2014. ECF No. 14 at 9-10.

A claimant's date last insured is relevant only for DIB applications. The claimant's earnings records are evaluated to determine whether or not she meets disability insured status. There are four ways for a claimant to meet disability insured status. 20 C.F.R. § 404.130(a). The only rule applicable to Plaintiff's work history is the first rule, which requires a claimant to be (1) fully insured and (2) have at least twenty quarters of coverage in the last forty quarters. 20 C.F.R. §

---

[1]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

404.130(b). To be considered fully insured, a claimant must have one quarter of coverage for every calendar year after the year in which she turned twenty-one, up to the calendar year before becoming disabled, though more than forty quarters of coverage is never required. 20 C.F.R. §§ 404.110, 404.132. To obtain a quarter of coverage, the claimant is required to earn a certain amount of wages per year; a claimant can only earn four quarters a year. 20 C.F.R. § 404.140. For example, in 2013, it took $1,160.00 in wages to earn a quarter of coverage. *See* Amount of Earnings Needed to Earn One Quarter of Coverage chart *available at* https://www.ssa.gov/oact/cola/QC.html (last viewed October 5, 2018). The last date in which a claimant met the disability insured status is called the "date last insured," and disability must be established on or before this date for a claimant to be eligible for benefits. 20 C.F.R. § 404.131.

The ALJ determined Plaintiff's date last insured was December 31, 2014. Tr. 25. Plaintiff asserts her date last insured was March 30, 2015. ECF No. 14 at 9. On a Disability Report – Field Office form dated January 31, 2014, the agency listed Plaintiff's date last insured as December 31, 2014. Tr. 234. The Certified Earnings Record in the file, dated April 2, 2015, shows Plaintiff with income into 2013. Tr. 221-22. This Certified Earnings Record shows Plaintiff's date last insured to be March of 2015. Tr. 221. At the 2016 hearing, while the ALJ was introducing the case for the record, she stated Plaintiff's date last insured was December 31, 2014. Tr. 42. Plaintiff's counsel pointed to the Certified Earnings Record showing Plaintiff's date last insured as March 30, 2015. *Id*. To which the ALJ responded the she would make a note of that. *Id*.

"Certified earnings records refer to the available SSA records containing earnings from the Internal Revenue Services (IRS) that we can utilize to make a 'formal' determination for benefits." POMS GN 01010.009. Plaintiff's last earnings were in 2013. Tr. 42, 218, 220, 222, 236, 247, 256. The Disability Report – Field Office produced on January 31, 2014 likely predated the required

ORDER GRANTING DEFENDANT'S MOTION - 6

reporting to the IRS for the year of 2013.  However, the April 2, 2015 Certified Earnings Records from the IRS likely included earnings from 2013.  Furthermore, counting the quarters of coverage represented on the April 2, 2015 Certified Earnings Record, Plaintiff earned twenty quarters of coverage from the second quarter of 2005 through the first quarter of 2013.  Tr. 222.  The fortieth quarter from the second quarter of 2005 is the first quarter of 2015.  *Id*.  Therefore, the Court finds that substantial evidence supports a date last insured of March 30, 2015.  The ALJ erred in her determination that Plaintiff's date last insured was December 31, 2014.

However, any error resulting from the ALJ's date last insured determination is harmless.  Plaintiff's advantage in extending the date last insured hinges on the ALJ applying the Grid rules at step five.  ECF No. 14 at 9-10.  However, the Plaintiff was not successful in demonstrating harmful error in the ALJ's step four determination.  *See infra*.  Therefore, no step five determination is required.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

**2.  Step Four**

Plaintiff argues that the ALJ erred in her step four determination.  ECF No. 14 at 10-16.

The claimant continues to bear the burden of proof at step four.  *Tackett*, 180 F.3d at 1098-99.  However, the ALJ is required to make factual findings at step four.  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) *citing* S.S.R. 82-62.  These findings of facts are set forth in S.S.R. 82-62: (1) a finding of fact as to the claimant's residual functional capacity; (2) a finding of fact as to the physical and mental demands of the claimant's past job/occupation; and (3) a finding of fact that the claimant's residual functional capacity would permit a return to her past job or occupation.  Plaintiff argues that the ALJ erred in all three required findings of

facts. ECF No. 14 at 10-16.

### A. Residual Functional Capacity

Plaintiff argues that the residual functional capacity determination was incomplete because it left out impairments opined by medical consultants, Anita Peterson, Ph.D., and John Gilbert, Ph.D. ECF No. 14 at 10-12.

Dr. Peterson reviewed Plaintiff's file and provided an opinion on March 5, 2014. Tr. 77-78. She stated that Plaintiff had a moderate limitation in (1) the ability to maintain attention and concentration for extended periods, (2) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and (3) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. In the narrative section of the form, Dr. Peterson stated that the claimant had the ability to understand and follow instructions and could do simple, repetitive tasks, as well as detailed and complex tasks. Tr. 78. She also stated that intermittent interruptions to concentration, persistence, and pace could occur, but Plaintiff was usually able to persist. *Id*. On July 24, 2014, Dr. Gilbert reviewed the file and provided an identical opinion. Tr. 108-09. The ALJ gave these opinions "great weight," Tr. 31, and assigned the following psychological limitations on Plaintiff's residual functional capacity determination: "In order to meet ordinary and reasonable employer expectation regarding attendance, production and work place behavior, the claimant can understand, remember and carry out unskilled, routine and repetitive work that can be learned by demonstration, and in which tasks to be performed are predetermined by the employer," Tr. 28.

Plaintiff argues that the residual functional capacity determination fails to account for the moderate limitations opined by Dr. Peterson and Dr. Gilbert. ECF No. 14 at 10-12. Defendant argues that the moderate limitations are addressed in

the residual functional capacity determination and that moderate is defined as "[y]our functioning in this area independently, appropriately, effectively, on a sustained basis is fair." ECF No. 15 at 7 *citing* 81 Fed. Reg. 66137, 66164 (Sept. 26, 2016).

The Federal Registers Defendant cites are those that changed the 12.00 Listings in January of 2017 and have been codified in 20 C.F.R. Part 404, Subpart P., App. 1 § 12.00(F). *See* 81 Fed. Reg. 66137, 66164. This argument regarding the definition of moderate is flawed for two reasons. First, these definitions cannot be applied to the 2016 ALJ decision because they did not take effect until January 17, 2017. Second, the definition Defendant cites applies only to the terms mild, moderate, and extreme as referenced in the 12.00 listings Paragraph B criteria and are only applied to determinations at steps two and three. 20 C.F.R. §§ 404.1520a, 416.920a. The form completed by Dr. Peterson and Dr. Gilbert address Plaintiff's mental residual functional capacity assessment (MRFCA), which is part of the step four determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Therefore, Defendant's argument fails.

However, the Program Operations Manual System[2] (POMS) DI 24510.060 details Social Security's Operating Policy as to the MRFCA forms completed by

---

[2]The POMS does not impose judicially enforceable duties on the Court or the ALJ, but it may be "entitled to respect" under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), to the extent it provides a persuasive interpretation of an ambiguous regulation. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587-588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000); *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010). Here, the issue is not determining the meaning of an ambiguous regulation, but instead understanding how to correctly read a form produced and distributed by the Social Security Administration to its medical consultants. Therefore, by relying on the POMS provision in this case, the

medical consultants and directs that the moderate limitations provided by Dr. Peterson and Dr. Gilbert do not constitute their opinions. Instead, the opinions are reflected in the narrative sections following the limitations the psychologists classified as moderate. While this POMS provision speaks specifically to Form SSA-4734-F4-SUP, the Court finds that the same language that appears in the POMS is repeated at the top of MRFCA questionnaires Dr. Peterson and Dr. Gilbert completed: "The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." Tr. 77, 91, 108, 123. Therefore, this POMS provision provides insight into how medical consultants are instructed to complete these forms.

Accordingly, the section of the form that includes mental function items which Dr. Peterson and Dr. Gilbert found to be moderately limited "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the [residual functional capacity] assessment." POMS DI 24510.060. Furthermore, the instructions for medical consultants completing such forms is that the "Moderately Limited" box should be checked "when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." POMS DI 24510.063. Therefore, moderate limitations identified on these reports do not necessarily preclude the indicated ability. Instead, moderate limitations simply show that the medical consultants acknowledged that Plaintiff's capacity was impaired in that area of functioning.

---

Court is not allowing the provision to set a judicially enforceable duty on the ALJ, but only using it as a guide to define the parameters of a medical consultant's opinion on an agency supplied form.

Therefore, comparing the narrative opinions of Dr. Peterson and Dr. Gilbert to the ALJ's residual functional capacity determination, the Court concludes that the opinions were adequately accounted for in the residual functional capacity. The narrative sections of the forms stated that the claimant had the ability to understand and follow instructions and could do simple, repetitive tasks, as well as detailed and complex tasks. Tr. 78, 108-09. They also stated that intermittent interruptions to concentration, persistence, and pace could occur, but that Plaintiff was usually able to persist. *Id.* The ALJ's residual functional capacity found that Plaintiff had the mental functional ability to "understand, remember, and carry out unskilled, routine and repetitive work that can be learned by demonstration, and in which tasks to be performed are predetermined by the employer." Tr. 28. Therefore, this Court finds that the ALJ did not err in the first factual finding required under S.S.R. 82-62.

### B. Past Relevant Work

The second factual finding required under S.S.R. 82-62 is the physical and mental demands of Plaintiff's past relevant work. The ALJ identified Plaintiff's past relevant work as Industrial Cleaner (DOT 381.687-018), Paint Sprayer II (DOT 741.687-018), Hand Sander (DOT 761.387-010), and Counter Clerk (DOT 249.366-010). Tr. 33. Plaintiff argues that the ALJ erred in finding Plaintiff's work as a Counter Clerk qualified as past relevant work and in classifying Plaintiff's sanding jobs as Hand Sander. ECF No. 14 at 12-13.

#### i. Counter Clerk

Plaintiff argues that her job as a Counter Clerk does not qualify as past relevant work. ECF No. 14 at 12. Past relevant work is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).

Plaintiff testified that her work for Qualex Photofinishing was developing

pictures from rolls of film submitted by customers. Tr. 50. She stated she had worked there for "maybe two weeks." Tr. 51. The vocational expert testified that this job was classified as a Counter Clerk with a Specific Vocational Preparation (SVP) of 2 and the time requirement to learn the job was a "short duration, up to 30 days." Tr. 61-62. Plaintiff's Detailed Earnings Query shows that she worked there in 2003 and earned a total of $1,044.59. Tr. 217.

This job meets the first prong of 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1), as it was within 15 years of the ALJ decision. It also meets the second prong of 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1) because in 2003, earnings of $800.00 a month demonstrated substantial gainful activity. Monthly Substantial Gainful Activity Amounts by Disability Type chart *available at* https://www.ssa.gov/oact/cola/sga.html (last viewed October 5, 2018). Plaintiff's earnings for the two weeks, totaling $1,044.59, exceeds the monthly substantial gainful activity amount. Tr. 217.

Plaintiff's argument hinges on the third prong of 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1), that Plaintiff's two weeks there was not sufficient to learn the job. ECF No. 14 at 12. According to the Dictionary of Occupational Titles (DOT), an SVP two job requires "[a]nything beyond short demonstration up to including 1 month." DICTIONARY OF OCCUPATIONAL TITLES App. C – Components of the Definition Trailer, (1991 WL 688702). Based on this definition, working at the job for two weeks was sufficient to learn the position. Therefore, the ALJ did not err in her conclusion that Plaintiff's work as a Counter Clerk qualified as past relevant work.

### ii. Hand Sander

Plaintiff argues that the ALJ erred in classifying Plaintiff's past jobs of sanding as Hand Sander in two ways: (1) the DOT number attached to the position does not exist and (2) Plaintiff's description of the job does not match the description of Hand Sander. ECF No. 14 at 13-14.

1        "The Social Security Administration has taken administrative notice of the Dictionary of Occupational Titles, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1153 n.8 (9th Cir. 2007) (citing 20 C.F.R. § 416.966(d)(1)). "In making disability determinations, the Social Security Administration relies primarily on the Dictionary of Occupational Titles for 'information about the requirements of work in the national economy.'" *Massachi*, 486 F.3d at 1153 (quoting S.S.R. 00-4p).

       Plaintiff's first argument, that the DOT number the ALJ provided in her decision does not exist, is accurate. The ALJ stated the job of Hand Sander had a DOT number of 761.387-010. Tr. 33. The ALJ took this number from the vocational expert's testimony providing the same number associated with the job of Hand Sander. Tr. 61. However, the DOT numbers the job of Hand Sander as 761.687.010. DICTIONARY OF OCCUPATIONAL TITLES § 761.687-010 (1991 WL 680441). There is no job associated with 761.387-010. However, this error would be considered harmless as there was sufficient information provided by the vocational expert and the ALJ to identify the correct job. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

       Plaintiff's second argument, that her description of the job does not match the job description attached to Hand Sander, is not supported by substantial evidence. Plaintiff asserts that the correct job title for her work sanding should be Machine Sander with a DOT number of 761-682-014. ECF No. 14 at 14.

       Plaintiff has described her jobs requiring sanding as "I sanded the parts and got them ready to be sprayed," Tr. 260, "I lifted doors, boxes, cabinet parts. In to the spraying area. Everyday," *Id*., "I sanded cabinet parts all day long," Tr. 261, She lifted "cabinet parts. Put them on a rack. Then pushed the racks to the spray booth. Everyday," *Id*., "I sanded doors all day long. I did the Finish sand, on the

doors," Tr. 262, she lifted "Doors. I carried them across the room. About a half a mile I guess. Everyday," *Id*. In all of the sanding jobs, she reported that she used machines, tools, or equipment, that the heaviest she lifted was fifty pounds, and that she frequently lifted twenty-five pounds. Tr. 260-62.

The DOT classifies the job of Hand Sander as light work with the following description:

> Smooths surface of wooden articles, such as furniture parts, mirror frames, caskets, and cabinet panels preparatory to finishing, or between finish coats, using sandpaper and steel wool. Feels surface of sanded article for smoothness. May scrape article with chisel or scraper to remove burrs, splinters, and excess glue. May mark defects, such as knotholes, cracks, and splits to facilitate repair of article. May be designated Finish Sander (woodworking); First-Coat Sander (woodworking).

DICTIONARY OF OCCUPATIONAL TITLES § 761.687-010 (1991 WL 680441). The DOT classifies the job of Machine Sander as medium work with the following description:

> Operates one or more sanding machines equipped with sanding belts or sanding heads, such as disks, drums, spools, or brushes mounted on vertical or horizontal spindles to smooth surfaces and edges of hand held wooden parts, boards, or furniture parts: Turns handwheels to adjust tension of sanding belt or to adjust height or angle of table or spindle. Presses button or switch to start machine. Holds and turns stock by hand against sanding head or belt or places stock on table or in jig and pushes stock back and forth against sanding head or belt, until rough surfaces and edges of stock are smooth. Examines and feels stock to verify smoothness. Replaces worn sandpaper belts or sandpaper on sanding heads, using handtools. May cut sandpaper to designated size and shape prior to replacement on machine, using scissors. May select and mount sanding head on spindle according to shape of article to be sanded, using screwdriver or wrench. May be designated according to type of machine operated as Belt Sander (woodworking); Spindle Sander (woodworking); according to type

sanding head used as Brush Sander (woodworking); Disk Sander (woodworking); Pneumatic-Drum Sander (woodworking); Spool Sander (woodworking); or according to area of article sanded as Edge Sander (woodworking).

DICTIONARY OF OCCUPATIONAL TITLES § 761.682-101 (1991 WL 680426).

Plaintiff argues that the vocational expert's testimony that Plaintiff's sanding jobs can be classified as hand sander was inconsistent with the DOT because Plaintiff reported that the work she performed was in the medium exertional level and she used tools, machines, or equipment. ECF No. 14 at 14. The vocational expert stated that her testimony was consistent with the DOT except for her testimony regarding absenteeism. Tr. 62-63. Plaintiff's counsel referred the vocational expert to her description of the work and asked if the vocational expert had identified the correct job. Tr. 63. The vocational expert responded that she would not change the DOT job title she identified, but would note that Plaintiff performed the job at the medium exertional level. *Id.* Considering the vocational expert testified that Plaintiff's jobs as Hand Sander was classified at the medium exertional level as performed, her testimony is not inconsistent with the DOT. Therefore, the ALJ did not err in relying on the vocational expert's testimony.

However, the ALJ did err in her conclusion that Plaintiff could perform her past relevant work as a Hand Sander "as actually and generally performed." Tr. 33. The residual functional capacity determination limited Plaintiff to light work, Tr. 28, which placed the job of hand stander as she actually performed it outside the residual functional capacity determination. However, any resulting error would be harmless because the ALJ's finding that she could perform the work as generally performed would still lead to a step four denial of benefits. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

///

## C. Comparison

The third requirement of S.S.R. 82-62 is a finding of fact that the claimant's residual functional capacity would permit a return to her past job or occupation. This requires the ALJ to compare the residual functional capacity determination and the physical and mental demands of the past relevant work to determine whether the claimant can return to any of her past relevant work. S.S.R. 82-62. When the ALJ "makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the [vocational expert's] head, we are left with nothing to review." *Pinto*, 249 F.3d at 847 *quoting Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996).

Here, the analysis concerning Plaintiff's past relevant work as generally performed did not occur only in the vocational expert's head. At the hearing, the vocational expert testified that based on the ALJ's hypothetical, which mirrored the residual functional capacity determination, Plaintiff could perform the jobs of Counter Clerk and Hand Sander as described in the Dictionary of Occupational Titles (DOT). Tr. 62. Considering the DOT is usually the best source for how a job is generally performed, *see Pinto*, 249 F.3d at 846, and the vocational expert's testimony did not vary from the DOT, Tr. 62-63, the comparison between the requirements of Plaintiff's past relevant jobs as generally performed with the residual functional capacity determination did not occur solely in the vocational expert's head. The Court's goal in *Pinto* was to ensure that it had enough information to review the ALJ's determination. 249 F.3d at 847. Plaintiff has not demonstrated that the residual functional capacity addressed limitations that were not considered in the DOT. *See supra*. The DOT is available in print for Plaintiff to compare to the residual functional capacity determination. Thus, the ALJ fulfilled her third factual finding without error.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED February 12, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE